UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN N. OSBORN | No. 2:14-cv-2424-KJN |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from August 27, 2010, through the date of the final administrative decision.  (ECF No. 10.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (ECF No. 11.)  Plaintiff filed a reply to defendant's cross-motion for summary judgement.  (ECF No. 12.)

---

[1] This action was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 7, 14.)

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I.    BACKGROUND

Plaintiff was born on June 25, 1975, has a GED, and is able to communicate in English. (Administrative Transcript ("AT") 261, 264, 266.)[2] He has worked as a heavy equipment operator, machinist, fast food service manager, fast food worker, and kitchen helper/dishwasher. (AT 26, 73-74, 266.) On August 27, 2010, plaintiff applied for SSI alleging that his disability began on January 23, 2009. (AT 16, 261.) Plaintiff alleged that he was disabled primarily due to a mental impairment, Miegs disease, swelling and infection of the legs, and ADHD. (AT 265.) After plaintiff's application was denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"). (AT 115-16.) An initial hearing took place on October 18, 2012, but was continued to allow plaintiff to obtain new representation and ensure that all of plaintiff's medical records were provided to the ALJ. (AT 84-91.) At a second hearing held on April 24, 2013, plaintiff was represented by an attorney and the ALJ heard testimony from a medical expert on physical impairments, a medical expert on mental impairments, plaintiff, and a vocational expert ("VE"). (AT 41-83.) During that hearing, plaintiff amended his onset date to August 27, 2010, the date he initially filed his SSI application. (AT 45.) The ALJ issued a decision dated May 9, 2013, determining that plaintiff had not been under a disability, as defined in the Act, between August 27, 2010, and the date of that decision. (AT 13-33.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 11, 2014. (AT 1-4.) Plaintiff then filed this action in federal district court on October 15, 2014, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

////

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ properly evaluated the medical opinion evidence and the medical evidence as a whole when determining plaintiff's residual functional capacity ("RFC"); (2) whether the ALJ properly evaluated the credibility of the plaintiff's testimony; (3) whether the ALJ breached her duty to develop the record; (4) whether the ALJ properly found at step three that plaintiff's impairments did not meet or equal a Listing; and (5) whether the ALJ posed proper hypothetical questions to the vocational expert.

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.  DISCUSSION

A.  Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to SSI pursuant to the Commissioner's standard five-step analytical framework.[3] At the first step, the ALJ concluded that plaintiff had not

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-

1 engaged in substantial gainful activity since August 27, 2010, the amended alleged onset date.

2 (AT 18.) At step two, the ALJ found that plaintiff had the following severe impairments:

3 intermittent right lower extremity edema secondary to cellulitis and hepatitis C. (AT 19.)

4 However, at step three, the ALJ determined that plaintiff did not have an impairment or

5 combination of impairments that met or medically equaled the severity of an impairment listed in

6 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 24.)

7 Before proceeding to step four, the ALJ assessed plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). He is capable of no more than frequent climbing. He cannot work in food service and food preparation.

11 (AT 24.)

12 At step four, the ALJ found, based on the VE's testimony, that plaintiff was unable to

13 perform any past relevant work. (AT 26.) At step five, the ALJ determined that, in light of

---

42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

1 plaintiff's age (a younger individual), education, work experience, and residual functional
2 capacity, there were jobs that existed in significant numbers in the national economy that plaintiff
3 could perform. (AT 26-27.) Thus, the ALJ concluded that plaintiff had not been under a
4 disability, as defined in the Act, from August 27, 2010, through the date of the ALJ's decision.
5 (AT 28.)

  B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

    1. *Whether the ALJ properly evaluated the medical opinion evidence and the medical evidence as a whole.*

9  First, plaintiff argues that the ALJ improperly evaluated the medical opinion evidence in
10 the record when determining plaintiff's RFC. In particular, he asserts that the ALJ improperly
11 considered the opinions of Dr. Kinnison, Dr. Boyce, Dr. Jone and Dr. Fahlberg with regard to the
12 limitations caused by his physical impairments. He further argues that the ALJ failed to consider
13 any limitations arising out of the combined effects of plaintiff's physical and mental impairments.
14 The court addresses each argument in turn and finds them to lack merit.

    a. Medical Opinion Evidence

16  The weight given to medical opinions depends in part on whether they are proffered by
17 treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F.3d 1195,
18 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally speaking,
19 a treating physician's opinion carries more weight than an examining physician's opinion, and an
20 examining physician's opinion carries more weight than a non-examining physician's opinion.
21 Holohan, 246 F.3d at 1202.
22  To evaluate whether an ALJ properly rejected a medical opinion, in addition to
23 considering its source, the court considers whether (1) contradictory opinions are in the record;
24 and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a
25 treating or examining medical professional only for "clear and convincing" reasons. Lester, 81
26 F.3d at 830-31. In contrast, a contradicted opinion of a treating or examining professional may be
27 rejected for "specific and legitimate" reasons. Id. at 830. While a treating professional's opinion
28 generally is accorded superior weight, if it is contradicted by a supported examining

professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). The regulations require the ALJ to weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[4] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Here, when determining plaintiff's physical RFC, the ALJ considered and weighed the examining opinion of Dr. Kinnison, the medical expert opinion of Dr. Boyce, who testified during the hearing, and the non-examining opinions of state agency consultative physicians Dr. Jone and Dr. Fahlberg. (AT 26.)

Dr. Kinnison examined plaintiff on December 18, 2010, at the request of the Commissioner. (AT 397.) While no previous medical records were provided for review, Dr. Kinnison performed a full physical examination and diagnosed plaintiff with "right lower extremity chronic edema and cellulitis." (AT 398-400.) Dr. Kinnison opined that plaintiff could stand and walk up to six hours daily and that his sitting capacity was unlimited. (AT 400.) Dr. Kinnison further opined that plaintiff could lift twenty pounds occasionally and ten pounds frequently, and could climb frequently. (Id.) Dr. Kinnison opined that plaintiff's postural activities were within normal limits, that his manipulative activities were unlimited, and that he had no environmental limitations. (Id.)

Dr. Boyce gave his expert medical opinion at the hearing on April 24, 2013, after a review of plaintiff's medical records.[5] (AT 50-57.) Dr. Boyce opined that plaintiff's swelling and

---

[4] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

[5] While plaintiff submitted several documents so close to the date of the hearing that Dr. Boyce was unable to review them prior to his appearance, plaintiff's counsel verbally summarized the

1    cellulitis could be adequately treated with a compression garment and imposed no functional

2    limitations.  (AT 53.)  However, Dr. Boyce opined further that plaintiff's hepatitis C required that

3    he avoid handling food when he had a positive viral load.  (AT 53-54.)

4        Non-examining physicians Dr. Jone and Dr. Fahlberg reviewed plaintiff's medical records

5    then-available to them and opined that plaintiff had no severe physical impairments.  (AT 417,

6    567.)

7        When discussing the medical opinion evidence, the ALJ gave more weight to the opinion

8    of Dr. Kinnison than she gave to Dr. Boyce's opinion because Dr. Kinnison had an opportunity to

9    examine the plaintiff, while Dr. Boyce had only reviewed plaintiff's medical records and testified

10   at his hearing.  This reason for favoring Dr. Kinnison's examining opinion over that of Dr.

11   Boyce's non-examining opinion was clearly proper as examining opinions are generally entitled

12   to more weight than those issued by physicians who only reviewed the claimant's medical records

13   and did not conduct their own independent examination.  Holohan, 246 F.3d at 1202; Lester, 81

14   F.3d at 830; 20 C.F.R. § 416.927(c)

15       The ALJ assigned little weight to the opinions of Drs. Jone and Fahlberg because a

16   significant amount of additional and material medical evidence was developed after those

17   opinions were issued.  (AT 26.)  Because those physicians opined that plaintiff had no severe

18   physical impairments, and thus had restrictions less severe than those ultimately determined by

19   the ALJ, the ALJ's assignment of reduced weight to their opinions was in plaintiff's favor and

20   therefore provides no support for plaintiff's contention that the ALJ's consideration of those

21   opinions constituted prejudicial error.

22       Ultimately, the ALJ's RFC determination adopted all of the limitations articulated by Dr.

23   Kinnison with the addition of a limitation against food handling, which was the sole limitation

24   articulated by Dr. Boyce.  (AT 26.)  This determination was based on a proper finding that Dr.

25   Kinnison's examining opinion was somewhat more persuasive than Dr. Boyce's non-examining

26   opinion.  Furthermore, the ALJ properly discounted the opinions of the state agency non-

27

28   findings of the additional records for Dr. Boyce during the hearing. (AT 43-44, 47-50.)

examining physicians that plaintiff had no functional limitations.  Even had the ALJ erred in weighing those physicians' opinions, it would have been harmless error as none of those physicians opined limitations greater than those determined by the ALJ.  Accordingly, plaintiff's argument that the ALJ improperly weighed the opinion evidence in the record concerning plaintiff's physical impairments is without merit.

Plaintiff appears to contend further that the ALJ erred by failing to consider additional opinions in the record concerning his physical impairments.  However, the records plaintiff cites to in support of this argument provide little more than diagnoses and some minimal treatment recommendations; they do not contain any discussion or medical judgment as to how plaintiff's impairments restricted him functionally.  See 20 C.F.R. § 416.927(c) (defining medical opinions as including statements regarding "what [the claimant] can still do despite [his or her] impairment(s), and [the claimant's] physical or mental restrictions.").  In short, plaintiff fails to identify a single opinion in the record regarding plaintiff's physical functional limitations that the ALJ did not consider and properly evaluate, and a review of the record reveals none.

There are also additional opinions in the record regarding plaintiff's mental impairments that the ALJ considered and weighed at step two of the analysis (AT 23); however, none of them articulated anything more than mild limitations to social and time management abilities.  (AT 58-63, 395, 401-07.)  Even the most restrictive opinion, by Dr. Palmer, still found plaintiff capable of performing complex tasks and work activities on a consistent basis without special or additional instruction.  (AT 395.)  Based on this evidence, the ALJ found that plaintiff's mental impairments were non-severe, in other words, that they imposed no more than a minimal or *de minimis* limitation on his ability to do work-related activities, a finding plaintiff does not challenge.[6]  (AT

---

[6] Plaintiff appears to argue in his motion that the ALJ erred at step two (ECF No. 10 at 21), but then concedes in his reply that the ALJ did not err in relying on Dr. Layton's expert testimony in finding plaintiff's mental impairments were not severe.  (ECF No. 12 at 6.)  Accordingly, it does not appear that plaintiff claims that the ALJ erred with regard to his consideration of the evidence regarding plaintiff's mental condition.  In any event, because the ALJ's RFC determination was supported by substantial evidence for the reasons discussed elsewhere in this order, and took into consideration both plaintiff's severe and non-severe impairments, any error the ALJ could have committed in failing to find a particular impairment severe at step two was harmless.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

24.) Furthermore, plaintiff has not articulated, nor does the record show, how any effects of plaintiff's mental impairments are inconsistent with the ALJ's RFC determination. Accordingly, plaintiff identifies no errors with regard to the ALJ's consideration of the mental opinion evidence in the record.

### b. Combined Effect of Plaintiff's Impairments

Plaintiff also contends that the ALJ failed to properly consider the combined effect of plaintiff's mental and physical impairments reflected in the medical record when she determined plaintiff's RFC. Specifically, plaintiff asserts that the "ALJ erred to[*sic*] disregard Dr. Palmer's specific opinion that 'Plaintiff's mental condition appears to be seriously exacerbated by his physical problems.'" (ECF No. 10 at 21 (citing AT 393.)) The regulations require an ALJ to consider the combined effects of all impairments both severe and non-severe in formulating an RFC. 20 CFR §416.945(a)(2). However, this single statement plaintiff relies on in support of his argument does not show how the ALJ erroneously failed to consider the combined effect of plaintiff's impairments when determining plaintiff's RFC. To be sure, in making her determination, the ALJ considered the entire record and "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (AT 24.) Furthermore, the ALJ expressly discussed the evidence in the record regarding plaintiff's mental impairments, including Dr. Palmer's clinical records, and determined that plaintiff did not have any severe mental impairments, even in light of his severe physical impairments. (AT 19-24.)

Moreover, Dr. Palmer's statement only indicates that, in Dr. Palmer's opinion, the impact of plaintiff's mental impairments would have been lessened if plaintiff's physical impairments were not present. (AT 393.) Even after taking into account the perceived impact plaintiff's physical impairments had on his mental functioning, Dr. Palmer opined that plaintiff had no greater than mild mental limitations. (AT 395.) Such mild limitations were consistent with the ALJ's RFC determination. Therefore, plaintiff's argument that the ALJ committed prejudicial error regarding how she considered the combined impact of plaintiff's mental and physical impairments is without merit.

For the reasons discussed above, the ALJ's consideration of the medical evidence in the record was proper and her RFC decision was supported by substantial evidence. Furthermore, plaintiff has not identified any limitation articulated in any opinion regarding either plaintiff's physical or mental health that indicates that plaintiff's functional capacity was more limited than the RFC adopted by the ALJ. Accordingly, plaintiff's argument that the ALJ committed prejudicial error in her consideration of the medical evidence is without merit.

   2.   *Whether the ALJ erroneously discounted plaintiff's own testimony concerning his symptoms and functional limitations.*

Next, plaintiff contends that the ALJ improperly found plaintiff's own testimony regarding the extent of his symptoms and functional limitations to be less than fully credible.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the

"'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between his testimony and his conduct, [claimant's] daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

In support of her adverse credibility determination, the ALJ relied on inconsistencies in plaintiff's testimony regarding his work history, history of substance abuse, and frequency of "flareups" of cellulitis requiring hospitalization, and the conservative medical treatment plaintiff received along with his failure to seek treatment. (AT 25-26.) For the reasons discussed below, the ALJ provided clear and convincing reasons for discounting plaintiff's testimony that were supported by substantial evidence in the record.

First, the ALJ properly considered plaintiff's work history in support of her adverse credibility determination. See Thomas, 278 F.3d at 959 (holding that the ALJ's reasoning that the claimant's spotty work history negatively affected her credibility regarding her inability to work was a proper consideration in support of the ALJ's adverse credibility determination). Plaintiff's work history was full of gaps that are due, not to symptoms arising from his impairments, but to stays in jail or prison. (AT 72-73.) Indeed, plaintiff had been incarcerated so many times that he had difficulty remembering during the hearing when any particular incarceration or release occurred. (AT 72.) Accordingly, there was substantial evidence to support the ALJ's conclusion that plaintiff's sporadic work history undermined plaintiff's claims that his impairments were so severe as to render him unable to perform full time work.

The ALJ also legitimately referenced the inconsistencies in the record regarding plaintiff's substance abuse. (AT 21-22.) See Thomas, 278 F.3d at 959 (ALJ properly considered claimant's lack of candor regarding drug and alcohol use). Plaintiff claimed on December 11, 2010, that he had not used methamphetamines since November of 2009, and did not report on January 2, 2011, that he used any substances aside from tobacco. (AT 392, 678.) However, plaintiff was

imprisoned in February of 2011 on a parole violation for failing a urine test and cutting off his ankle bracelet, which he admitted to doing while using illicit substances. (AT 500-02.) In his intake documents for that prison stay, plaintiff described his history of methamphetamine use as four grams daily from the time he was seventeen up to the present. (AT 504.) Plaintiff also specifically admitted that he was using drugs in the period between October 2010 and February 2011. (Id.) Hospital records contain admissions to occasional marijuana use on October 15, 2011, (AT 670), and occasional methamphetamine use in the summer of 2012 and February of 2013. (AT 689.) In short, the ALJ properly considered the multitude of inconsistencies regarding plaintiff's substance abuse as reflecting more generally on his candor regarding the impact of his impairments. See Thomas, 278 F.3d at 959 (holding that the ALJ's inference that the claimant's lack of candor regarding her history of drug use "carrie[d] over to her description of physical pain" was a clear and convincing reason for discounting the claimant's testimony).

In light of the above, the court finds that the ALJ provided multiple specific, clear, and convincing reasons for discounting plaintiff's testimony of disabling symptoms and functional limitations beyond the limitations assessed in the ALJ's RFC that were supported by substantial evidence from the record.[7]

    *3.    Whether the ALJ met her burden to develop the record.*

Plaintiff contends further that the ALJ failed to adequately develop the record – more specifically, that the ALJ did not make sufficient efforts to obtain the alleged remainder of plaintiff's mental health treatment records, and failed to contact plaintiff's treating physicians for further clarification of their opinions. This argument is devoid of merit.

"The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "When the claimant is unrepresented, . . . the ALJ must be especially

---

[7] While the ALJ also considered other reasons for discounting plaintiff's credibility the reasons discussed here are sufficient to uphold the ALJ's decision and therefore the court does not consider the remaining reasons.

12

diligent in exploring for all the relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

It is well established that a claimant bears the burden of providing medical and other evidence that support the existence of a medically determinable impairment. Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). Indeed, it is "not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Yuckert, 482 U.S. at 146 n.5.

Nevertheless, as the Ninth Circuit Court of Appeals has also explained:

> The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered. This duty extends to the represented as well as to the unrepresented claimant. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts ... The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry.

Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. However, as some courts have persuasively observed, the ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997) (citation omitted).

Here, the ALJ developed a large and reasonably thorough record, including medical opinions, various hospital visits, plaintiff's interactions with the California Department of Corrections health services, and numerous sets of treatment notes. The ALJ also continued the hearing date to allow plaintiff to get new representation and ensure that all relevant documents were in the record. (AT 87-88.) The ALJ even called two medical experts and a vocational

1  expert to testify at the second hearing to provide medically accurate summaries of the record and
2  allow the ALJ to understand the impact of plaintiff's alleged limitations.  (AT 46.)  These steps
3  clearly indicate that the ALJ took all reasonable measures to fulfill her duty to develop the record.
4      Plaintiff had every opportunity to present any additional evidence he felt was necessary or
5  desirable.  Dr. Largo's treatment notes were requested by the state agency both during plaintiff's
6  initial application and on reconsideration, but were not provided until the case was before an ALJ.
7  (AT 432.)  Additionally, even after plaintiff's hearing date was continued, multiple documents
8  were not provided in a timely fashion for the second hearing.  (AT 48-49.)  At the second hearing,
9  plaintiff's counsel stated that he was not aware of any missing documents material to plaintiff's
10 case.  (AT 43-44.)  Therefore, any lack of evidence in the record falls squarely on plaintiff and
11 cannot be shifted onto the shoulders of the ALJ, who took numerous measures to ensure that the
12 record was fully developed before issuing a decision.
13      *4.      Whether the ALJ properly found at step three that plaintiff's impairments did not*
14         *meet or equal a listing.*
15     Plaintiff also appears to argue that the ALJ erred in determining that plaintiff's
16 impairment's did not meet or equal listing-level severity.  Plaintiff's motion mentions the ALJ's
17 decision with regard to the listings only once, in a parenthetical example of how the ALJ failed to
18 consider the combined effects of plaintiff's mental and physical impairments.  (ECF No. 10 at
19 21.)  To the extent that plaintiff intends to challenge the ALJ's determination that plaintiff's
20 impairments did not meet or equal listing-level severity, he does not in any way assert that he
21 meets a particular listing set forth in 20 CFR Part 404, Subpart P, Appendix 1, let alone show that
22 he satisfies the requirements for such a listing.  Therefore, to the extent plaintiff attempts to raise
23 an argument with regard to the ALJ's step three determination, his argument is not well taken.
24      *5.      Whether the ALJ posed proper hypothetical questions to the Vocational Expert.*
25     Finally, plaintiff argues that the ALJ erred at step five by relying on VE testimony that
26 lacked evidentiary value because it was based on improper hypothetical questions that failed to
27 include all of plaintiff's functional limitations.
28 ////

An ALJ may pose a range of hypothetical questions to a vocational expert, based on alternate interpretations of the evidence. However, the hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC determination, must account for all of the limitations and restrictions of the particular claimant that are supported by substantial evidence in the record as a whole. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted). However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006). Furthermore, as the Ninth Circuit Court of Appeals has observed, an ALJ may synthesize and translate assessed limitations into an RFC assessment (and subsequently into a hypothetical to the vocational expert) without repeating each functional limitation verbatim in the RFC assessment or hypothetical. Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (holding that an ALJ's RFC assessment that a claimant could perform simple tasks adequately captured restrictions related to concentration, persistence, or pace, because the assessment was consistent with the medical evidence).

Plaintiff asserts that because the ALJ failed to properly evaluate the medical evidence and find plaintiff's testimony credible, the hypotheticals she posed to the VE based on the limitations contained in her RFC determination were improper as they did not reflect all of plaintiff's functional limitations. This argument, however, lacks merit because, for the reasons stated above, the ALJ properly evaluated the medical evidence and gave proper reasons for finding plaintiff's testimony regarding the impact of his impairments not credible. Because the ALJ found plaintiff not credible, she was not required to include any of plaintiff's alleged limitations beyond those already included in the RFC determination. Furthermore, the ALJ posed hypotheticals to the VE that were based on the limitations outlined in the ALJ's RFC determination, which was supported by substantial evidence from the record. Therefore, plaintiff's argument is without merit.

////

V. <u>CONCLUSION</u>

For the foregoing reasons, the court concludes that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 10) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 11) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: February 16, 2016

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE